UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HYUNDAI MERCHANT MARINE CO., LTD., :
　　　　　　　　　　　　　　　　　　　　 :
　　　　　　Plaintiff, 　　　　　　　　　　:　　　14 Civ. 7965 (LGS)
　　　　　　　　　　　　　　　　　　　　 :
　　　　　　-against- 　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　 :　　　**DECLARATION OF**
MITSUBISHI HEAVY INDUSTRIES, LTD., 　　:　　**TOMOKO MIYAKE IN SUPPORT**
　　　　　　　　　　　　　　　　　　　　 :　　**OF DEFENDANT MITSUBISHI**
　　　　　　　　　　　　　　　　　　　　 :　　**HEAVY INDUSTRIES, LTD'S**
　　　　　　Defendant. 　　　　　　　　　 :　　**MOTION TO DISMISS**
　　　　　　　　　　　　　　　　　　　　 :　　**PLAINTIFF'S COMPLAINT FOR**
　　　　　　　　　　　　　　　　　　　　 :　　**FORUM NON CONVENIENS**
　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, TOMOKO MIYAKE, declare as follows:

1. I am a citizen of Japan and reside in Tokyo, Japan.

2. I am a Manager of the Legal & General Affairs Department with Mitsubishi Heavy Industries, Ltd. ("MHI"), a Japanese corporation, at MHI's corporate headquarters in Tokyo, Japan. I graduated from Keio University in 1992 (Bachelor in Law), Santa Clara University School of Law in 2001 (L.L.M.) and Keio University Law School in 2007 (J.D.).

3. In my capacity as Manager of Legal & General Affairs Department, I am responsible for all legal matters regarding commercial aviation and transportation systems, integrated defense, space systems, R&D activities, and information and communication technology solutions.

4. The above-captioned action involves the break-up and sinking of the M/V MOL COMFORT (the "Vessel") on June 17, 2013 through July 11, 2013 on the high seas in the Indian Ocean (the "Incident").

5. On November 19, 2014, a version of HMM's Complaint in the above-captioned action, translated into the Japanese language, was served upon MHI in Japan by the Tokyo District Court via the Supreme Court of Japan, pursuant to the Hague Convention.

6. As a result of the Incident, there are currently 22 consolidated civil litigations filed against MHI involving approximately 200 plaintiffs with combined claims totaling in excess of 62 Billion Yen (approximately $517 Million USD) pending in the Tokyo District Court of Japan. Virtually all parties who have claims arising out of the Incident have brought their actions against MHI in the Tokyo District Court including the Vessel's owner and operator, HMM's insurer, TT Club, parties to HMM's operative slot charter agreement involving the Vessel, and a wide variety of foreign corporations including corporations established in the United States, Germany, United Kingdom, Hong Kong, Finland, Denmark, Netherlands, India, Switzerland, Russia, Singapore and others. In addition, Nippon Yusen Kabushiki Kaisha (NYK Line), who has entered into a joint defense agreement with Plaintiff relating to claims asserted by their common cargo client, Nike, Inc. in a contractual arbitration proceeding in New York, is one of the Tokyo District Court slot charterer plaintiffs. Concurrently, there is also related litigation pending in the Tokyo District Court against the Vessel's owner and operator including Mitsui O.S.K. Line, Ltd. (MOL) which involves a liability limitation proceeding pursuant to the Limitation of Vessels Owner's Liability Act of Japan (the "Limitation

Proceeding"). HMM has already joined the Limitation Proceeding in the Tokyo District Court as a plaintiff in the actions but has not filed any claim against MHI in Japan.

7. The Incident has received widespread media coverage in Japan. The Incident directly implicates the reputation of Japan's shipbuilding industry which employs tens of thousands of Japanese citizens, the resolution of which could have a significant impact on the economy of the nation. Japanese citizens have a strong interest in the fair and efficient resolution of this national tragedy and it is for this reason that the Japanese Government has led the investigation efforts and the Tokyo District Court has taken responsibility for resolving all related disputes.

8. The Japanese Government as well as the Japanese classification society who classed the Vessel, Nippon Kaiji Kyokai (known as Class NK or NK), organized the factual investigations into the incident in Japan. MHI employees cooperated with the Japanese Government and Class NK in these investigations and some MHI employees are currently under non-disclosure agreements with the Japanese Government regarding their involvement in the investigation. The Japanese Government expressed serious concern to MHI that MHI's participation in a lawsuit in the U.S. could impede its investigation by jeopardizing its confidential nature.

9. The Vessel was designed by MHI in Japan; manufactured by MHI at its shipyard in Nagasaki, Japan; and delivered in Japan pursuant to a shipbuilding contract entered into in Japan with the Vessel's original owner, MOL Euro-Orient Shipping S.A., a subsidiary of a Japanese company.

10. MHI is not a party to HMM's operative slot charter agreement regarding HMM's use of space on the Vessel. MHI is also not a party to HMM's operative Global Ocean Freight

3

Agreement with Nike, Inc. (or any other agreements it may have entered into with any of its other cargo clients) involving HMM's provision of services on board the Vessel, pursuant to which Nike allegedly demanded New York arbitration against HMM.

11. The vast majority of MHI's facilities, including the Research and Innovation Center and most of its manufacturing plants are located in Japan. MHI does not operate any office or plant in the United States.

12. All relevant documents relating to MHI's design, construction, testing, sale and delivery of the Vessel are stored at MHI facilities in Japan and are available for inspection there. The vast majority of these documents are Japanese-language documents which would require translation for use in the U.S. litigation. Many of these documents are voluminous and/or odd-sized in a manner which would make reproduction and transfer to the U.S. excessively burdensome.

13. The vast majority of witnesses with information relevant to this litigation, particularly all product liability claims, are Japanese nationals who reside in Japan. Most of these witnesses speak the Japanese language only and do not speak English, and therefore would require interpreters to participate in the U.S. litigation. Such potential witnesses include, but are not limited to, all MHI employees involved with the design, construction, inspection, testing, sale and delivery of the Vessel, as well as the personnel from the Japanese entities involved with investigations into the Incident. The Vessel's operator at the time of the Incident was MOL, a Japanese corporation, and most of their key employees are Japanese nationals who speak the Japanese language. The vast majority of the relevant documents relating to communications between MHI and MOL regarding the

Incident are written in the Japanese language. There are no witnesses with direct knowledge of any of the relevant issues who reside in the United States.

14. As a Japanese corporation with no offices in the United States, MHI is not amenable to suit in the Southern District of New York and service of process in this action required translation of Plaintiff's complaint into the Japanese language for service at MHI's headquarters in Tokyo, Japan in cooperation with the Tokyo District Court via the Supreme Court of Japan pursuant to the rules of the Hague Convention.

15. MHI is amenable to suit in Japan and litigating Plaintiff's claims in the Tokyo District Court, which, as evidenced by the 22 litigations already pending against MHI in Tokyo as a result of the Incident, clearly permits litigation of maritime product liability and negligence/tort claims. Most of the related litigations pending in the Tokyo District Court were commenced over a year before HMM served its complaint upon MHI and involve claims which, in many instances, are nearly identical to the claims asserted against MHI by the Plaintiff in this litigation. The litigation in the Tokyo District Court is still pending and open and there is no restriction under the Code of Civil Procedure of Japan to prevent HMM from filing a new lawsuit against MHI in Japan.

16. In the event a witness was unwilling to participate in litigation in Tokyo, the laws of Japan provide for compulsory process to secure the attendance of unwilling witnesses within the court's jurisdiction, essentially equivalent to the subpoena power the Southern District of New York has over witnesses residing in the United States. *See* Japan Code of Civil Procedure Articles 190-211, Japan Rules of Civil Procedure Articles 106-128.

17. If litigation were to continue in the Southern District of New York, plane tickets would have to be purchased to transport the necessary Japanese witnesses the approximately

7,000 miles from Japan to New York. A non-stop flight from Tokyo, Japan to New York takes approximately 14 hours in-flight, and costs approximately $1,500-$3,000 USD, on average. However, if litigation of Plaintiff's claim were to continue in the Tokyo District Court, most witnesses would be able to use Japan's mass-transit / public transportation system to attend proceedings. About 20 minutes via rail and subway within the Tokyo-area costs approximately 340 yen (approximately $2.80 USD), on average. Additionally, Japanese witnesses transported to the U.S. would require hotel lodging near New York City. A three-star hotel in reasonable proximity to the Southern District of New York courthouse and/or New York airports costs approximately $350 USD per night. However, if the litigation proceeded in Japan, witnesses would likely not require expenditures for any lodging, as most could return to their own residences after providing testimony in the Tokyo District Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 17, 2015

*Tomoko Miyake*
Tomoko Miyake

## CERTIFICATE OF SERVICE

I, the undersigned, attorney for the law offices Condon & Forsyth LLP, attorneys for **DEFENDANT MITSUBISHI HEAVY INDUSTRIES LTD.** do hereby certify that I have served all counsel in this action with a copy of the pleading(s) herein below specified by ECF, to the following address(es):

Pleading:   DECLARATION OF TOMOKO MIYAKE IN SUPPORT OF DEFENDANT MITSUBISHI HEAVY INDUSTRIES, LTD'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FORUM NON CONVENIENS

**John D. Kimball, Esq.**
BLANK ROME, LLP
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000
jkimball@blankrome.com

at the address designated by said attorneys for that purpose via ECF.

By: /s/

July 21, 2015