UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HYUNDAI MERCHANT MARINE CO., LTD.,   :

                                 :          CIVIL NO. 14 CV 7965 (LGS)

Plaintiff,                     :

                                 :

               -against-          :

                                 :

MITSUBISHI HEAVY INDUSTRIES, LTD.,   :

                                 :

Defendant.                  :

                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MITSUBISHI HEAVY INDUSTRIES, LTD.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR *FORUM NON CONVENIENS***

CONDON & FORSYTH LLP
Marshall S. Turner, Esq. (MT 9246)
Diana Gurfel Shapiro, Esq.
Michael G. Koueiter, Esq.
7 Times Square
New York, New York 10036
Tel.: (212) 490-9100
Fax: (212) 370-4453
mturner@condonlaw.com

*Attorneys for Defendant*
*Mitsubishi Heavy Industries, Ltd.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    I.  HMM's Choice of Forum is Only Entitled to Minimal Deference ........................................ 2

    II.  Japan is Clearly an Adequate and Available Alternative Forum ............................................ 3

    III.  Balancing Private and Public Interests Strongly Favors Japan .................................................. 7

CONCLUSION .......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banculescu v. Compania Sud Americana De Vapores, SA,*
   No. 11 Civ. 2681 (ALC), 2012 WL 5909696 (S.D.N.Y. Nov. 26, 2012)...................................7

*Borden Inc. v. Meiji Milk Prods. Co.,*
   No. 90 Civ. 5611 (MJL), 1990 WL 151118 (S.D.N.Y. Oct. 3, 1990) .......................................6

*Borden Inc. v. Meiji Milk Prods. Co.,*
   919 F.2d 822 (2d Cir. 1990)............................................................................................6

*Borden Inc. v. Meiji Milk Prods. Co.,*
   500 U.S. 953 (1991)......................................................................................................6

*Calavo Growers of California v. Belgium,*
   632 F.2d 963 (2d Cir. 1980)............................................................................................6

*Calavo Growers of California v. Belgium,*
   449 U.S. 1084 (1981)....................................................................................................6

*Pollux Holding Ltd. v. Chase Manhattan Bank,*
   329 F.3d 64 (2d Cir. 2003)..............................................................................................7

*Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.,*
   426 F.3d 580 (2d Cir. 2005)..........................................................................................10

## PRELIMINARY STATEMENT

Mitsubishi Heavy Industries, LTD. ("MHI") submits this Reply Memorandum of Law together with the Declaration of Naoki Ueda in response to Plaintiff Hyundai Merchant Marine Co., LTD's ("HMM") opposition and in further support of its Motion to Dismiss on the grounds of *forum non conveniens*.

In its Opposition, HMM fails to raise a single relevant case not addressed by MHI's motion papers, but merely misconstrues and misinterprets the primary cases that support the motion. HMM further attempts to alter the facts by relying upon unsupported, unfounded, hearsay and insulting statements of a Japanese lawyer they have retained to represent them in litigation pending in Tokyo. Basic undisputed facts are:  HMM has no office in New York and it surrendered its authorization to do business in the State of New York in 2010;[1] and  HMM has no U.S. employee with direct knowledge of any fact relevant to the Incident or this litigation.[2] HMM relies almost solely on its pending New York arbitration with Nike as the basis for its allegation that litigating in the U.S. is convenient.  However, participating in a U.S. arbitration was a business decision that HMM agreed to by a contract to which MHI was not a party. Likewise, Nike is not a party to this litigation and MHI is not a party to the arbitration.  In fact, Nike's insurer and HMM's insurer followed the proper course for product liability claims and filed their suits against MHI in the Tokyo District Court along with hundreds of other claimants. This Court should require HMM to do the same to recover the mere $10,000 insurance deductible it seeks in damages in this litigation and refuse HMM's request for special treatment.

---

[1] *See* Ex. B to Turner Decl., Admissions at Nos. 2-4.

[2] *See id.* at No. 54.

HMM has admitted that of the foreign third-party claims for which it seeks indemnity and contribution not a single claim has been paid or resulted in a judgment against HMM.

Japan is clearly the center of gravity of this dispute as it has the greatest interest in regulating its shipbuilding industry and its judicial system is clearly adequate.   HMM's projection of prolonged litigation in Japan is unsubstantiated and it is pure speculation to assert that trial in the U.S. would proceed any faster.   Further, even if resolution in Japan were to take longer, this court has repeatedly held that a slower forum is still adequate.

Finally, HMM's allegations of prejudice and corruption in the Japanese courts are patently insulting and baseless – a perverse misinterpretation of Tomoko Miyake's Declaration. MHI has been a willing and cooperative participant in all investigations and litigation in Japan. Forcing MHI to participate in completely duplicative litigation in a foreign country at the request of a single foreign plaintiff presents an inconvenience that heavily outweighs any alleged convenience concocted by HMM.   As Ms. Miyake actually said in her Declaration, HMM's action should be dismissed and the litigation continued in Tokyo for "the fair and efficient resolution" of all related disputes arising from this national tragedy.

## ARGUMENT

### I.   HMM's Choice of Forum is Only Entitled to Minimal Deference

HMM's application of the law on the subject of "deference" is misplaced.   It is only the domestic plaintiff's choice of forum that is afforded the presumption in favor.   For HMM, the "sliding scale" is slid all the way to the far end of minimal deference.   Even the 3rd Circuit case HMM relies upon held that a foreign plaintiff's choice can be overcome only by a "strong showing of convenience," which HMM clearly has not, and cannot, provide.

HMM contractually agreed with its cargo client Nike as part of a voluntary for-profit business deal to resolve its contract disputes in arbitration in New York regardless of any

2

convenience factors.  HMM should not be permitted to now drag MHI, who was not a party to the HMM/Nike service agreement, into litigation in the U.S. on a product liability claim that has nothing to do with the U.S.  The fact that HMM has retained U.S. counsel and an expert in the contract arbitration is of no consequence to this litigation.[3]  While it is true that HMM produced some documents from its Nike arbitration, most are completely irrelevant to this litigation and those that are relevant are publicly available documents already in MHI's possession.  In fact, upon request from MHI counsel for potentially relevant documents, counsel for Nike asserted a confidentiality privilege and HMM declined to produce the requested documents.  Even HMM's only alleged "local" contact – an office in New Jersey – appears to belong to a subsidiary, not to HMM, and HMM has failed to identify anyone or anything in New Jersey that has any knowledge or information related to this action, and HMM is not even authorized to do business in New Jersey.  HMM's assertion that its allegations "put its choice of forum on the same footing as a domestic plaintiff" is unfounded.[4]

## II.    Japan is Clearly an Adequate and Available Alternative Forum

Ironically, Plaintiff's entire Opposition is based upon the hearsay and misstatements of the lawyer they retained to represent them in the litigation they have initiated in Japan.  HMM does not put Mr. Matsui forward to comment on Japanese or U.S. law, but as a vehicle to present unsupported hearsay on why the U.S. is more convenient to the litigants than Japan.[5]   Of the

---

[3] HMM admits that the reason it filed this action in New York is the presence of its arbitration lawyer and expert. *See* Kang Decl. at ¶ 3.

[4] *See* Plaintiff's Opposition Memorandum of Law (hereinafter "HMM Opp.") at p. 11.

[5] Mr. Matsui distorts even the most basic facts in his Declaration, stating, for example, that "Paragraph 9 of Ms. Miyake's declaration suggests the MOL COMFORT's original owner was a Japanese company.  That is not correct." *See* Matsui Decl. at ¶ 8.  Ms. Miyake's declaration actually states that "the Vessel's original owner, MOL Euro-Orient Shipping S.A., [is] a *subsidiary* of a Japanese company." *See* Miyake Decl. at ¶ 9 (emphasis added). Ms. Miyake's statement is entirely correct as written.

more than 200 plaintiffs who have filed claims against MHI in Tokyo, not a single other claimant has filed a claim in the U.S. or claimed that Japan is less convenient. Even TT Club, HMM's insurer who paid HMM's claim for loss of its containers, has elected to bring its subrogation action in Tokyo. Mr. Matsui has also failed to mention, among his many qualifications, that he is also representing other foreign claimants in product liability actions he chose to file in Tokyo against MHI, but in those cases he has not asserted that the judicial system of Japan is inadequate and corrupt. While Mr. Matsui's declaration is filled with inaccuracies, MHI need not waste the court's time addressing them all – rather, a sampling of the most egregious misstatements is sufficient:

Referring to ¶ 7 of Ms. Miyake's Declaration, Mr. Matsui states, "[F]or MHI to argue it cannot lose the case otherwise there could be a significant impact on Japan's economy is . . . very strong evidence that MHI is attempting to unfairly prejudice the Japanese court". [6] The truth is that Ms. Miyake stated:

> The Incident directly implicates the reputation of Japan's shipbuilding industry which employs tens of thousands of Japanese citizens, the resolution of which could have a significant impact on the economy of the nation. Japanese citizens have a strong interest in the fair and efficient resolution of this national tragedy. [7]

Ms. Miyake's statements are completely correct and refer to the resolution of all cases arising from the Incident, not just HMM's suit. Mr. Matsui outrageously misconstrues Ms. Miyake's statement, and his conclusion that "[i]t is therefore quite reasonable that HMM would prefer to sue MHI outside Japan to avoid any such unfairness" is not only unfounded and insulting to the Japanese judicial system but is an admission on his part that HMM is engaged in the most base form of forum shopping. Mr. Matsui also fails to reconcile his accusations with the fact that

---

[6] *See* Matsui Decl. at ¶ 4.

[7] *See* Miyake Decl. at ¶ 7.

most of the largest Japanese insurance companies are also plaintiffs against MHI in the Tokyo Court, as is the largest Japanese shipping company. The similarly erroneous and insulting statements of Mr. Matsui in paragraphs 5, 6 and 7 of his Declaration are based upon nothing more than his own self-serving speculation and hearsay. His tirade against the existence of non-disclosure agreements between the government agency investigating the Incident and members of the investigating Committee is appalling. Contrary to Matsui's wild accusations, members of the Committee are required to sign non-disclosure agreements that remain in effect "even after completion of the committee."[8] This is a common practice of government accident investigation agencies throughout the industrialized world and do not result in his insulting baseless conclusion "that MHI and the Japanese government may be trying to suppress testimony and MHI may attempt to prejudice the Japanese court."[9]

In ¶ 6 of Matsui's Declaration, referring to ¶ 8 of Ms. Miyake's Declaration, he suggests there is something duplicitous about MHI's position in this case as compared to its position in the Tokyo Court regarding the use of the investigation reports. However, MHI's position is entirely accurate and consistent with evidentiary issues that typically arise in litigation. The issue MHI has raised regarding the investigation reports in the Tokyo Court is the usual evidentiary question of for what purposes can the investigation reports be introduced as evidence. This is merely another instance of Mr. Matsui misconstruing a statement of Ms. Miyake and should be disregarded.

---

[8] *See* Declaration of Naoki Ueda dated August 28, 2015.

[9] *See* HMM Opp. at p. 15.

HMM alleges that it would be deprived of due process if forced to litigate in Tokyo because Japan's court procedures are different in minor regards. As this court has held, "[t]he procedures and remedies available in a Japanese court may not be identical to those available in a U.S. district court, but this does not render Japan an inadequate forum."[10] As to length of time to complete litigation through the appellate process, there is no guarantee litigating this complex action in the U.S. would be quicker than in Japan. Further, the Second Circuit has held that a slower forum can still be adequate.[11] While HMM claims that litigation in Japan will prejudice them in claims brought against them in foreign courts (China, France and Belgium) their claims handler, Kevin Kang, testified in his deposition that all claims against HMM have been held in abeyance.[12] Timeliness of adjudication should not be a concern for HMM where it has already been compensated for its losses by its insurer and can now seek only to recover its $10,000 insurance deductible. Even in cases where emergency relief was requested, the Second Circuit has still granted forum non conveniens dismissal in favor of Japan with conditions attached.[13]

As this court has held repeatedly, if the defendant is amenable to service of process in the proposed alternative forum and litigation of the subject matter of the dispute is permitted, the

---

[10] *Borden Inc. v. Meiji Milk Prods. Co.*, No. 90 Civ. 5611 (MJL), 1990 WL 151118, at *7 (S.D.N.Y. Oct. 3, 1990), *aff'd as mod.* 919 F.2d 822, 828 (2d Cir. 1990), *cert. denied* 500 U.S. 953 (1991).

[11] *Id.* citing *Calavo Growers of California v. Belgium*, 632 F.2d 963, 968 n. 6 (2d Cir. 1980), *cert. denied* 449 U.S. 1084 (1981).

[12] In his Declaration, HMM's claims handler Mr. Kang indicates concern about the potential prejudicial impact litigating HMM's claims against MHI may have on HMM's ability to defend the foreign third-party claims pending against it in the Korean court. *See* Kang Decl. ¶ 7. However, Mr. Kang also admits that "[t]he Korean court has ruled that these claims can be stayed pending satisfactory progress in the Japanese limitation hearings." *Id.* at ¶ 8. The fact that the Korean court may ultimately "review the merits of the claims and deliver the judgment regardless" of the Tokyo District Court proceedings is not evidence of any potential prejudicial impact on HMM, especially considering that there is no evidence the Korean court would treat litigation in the SDNY any differently. *Id.* at ¶ 7. Kang fails to identify any prejudice to HMM as he admits that all foreign claims have been stayed pending resolution of the litigation in Japan.

[13] *Borden*, 919 F.2d at 829 (2d Cir. 1990), *cert. denied* 500 U.S. 953 (1991) (permitting plaintiff to re-apply for temporary relief in the event Japanese court did not address plaintiff's application for same within 60 days).

alternative forum should be deemed adequate and available, sufficient to satisfy the second prong of the forum non conveniens analysis.[14]  Because MHI has agreed to accept service of process in Japan and, as exhibited by the 22 consolidated litigations brought by over 200 plaintiffs with nearly identical allegations as HMM already pending against MHI in Tokyo, Japan is clearly an adequate and available alternative forum for this litigation.[15]

## III.   Balancing Private and Public Interests Strongly Favors Japan

### A.   Private Interests

To support this baseless claim that the "bulk of the evidence and the majority of the witnesses are not located in Japan," HMM specifically cites to possible testimony from the crew, and other non-parties to the litigation, and documents produced in its contractual arbitration proceeding with Nike.  It is unclear how HMM proposes that the SDNY could compel testimony from such non-parties or how their testimony pertains to the product liability claims asserted by HMM.  HMM's allegations of MHI's wrongdoing relate to the design, construction and sale of the Vessel, which involve almost exclusively MHI's Japanese employees in Japan.  Although MHI was not involved with the Vessel's operation and maintenance after the initial sale, such evidence would have little bearing on the product liability issues at stake in this litigation and certainly does not form the "bulk of the evidence."  However, it should be noted that the operator of the Vessel was Mitsui O.S.K. Lines, Ltd. (MOL), a Japanese company who is a party to the litigation in Japan and whose witnesses and documents would presumably be available in Japan, not in the U.S.  Additionally, all of the foreign crewmembers HMM points out may not be available in Japan are also not U.S. citizens and are not likely to be available in the U.S. either.

---

[14] *See, e.g., Banculescu v. Compania Sud Americana De Vapores*, No. 11 Civ. 2681 (ALC), 2012 WL 5909696, at *3 (S.D.N.Y. Nov. 26, 2012) (quoting *Pollux Holding. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)).

[15] *See* Ex. A attached hereto "MOL Comfort/List of Litigation" list the cases pending in Tokyo against MHI as of March 2015, MHI_001913-001914.

While HMM continues to tout the importance of the alleged U.S. contacts of the Vessel's sister ships, and the AZ, the connection of these ships to any relevant issue in this litigation is tenuous at best. All of the sister ships and the AZ were designed and manufactured by MHI in Japan, and the bulk of relevant witnesses and documentation would be located in Japan as well.[16] It is unclear how or what HMM is referring to in stating that MHI is capable of transporting its employees to the United States to testify "with relative ease and minimal expense." Even travel expenses and interpreter costs necessary for just a few of these witnesses to testify in New York would quickly exceed HMM's total claim for its $10,000 insurance deductible. Using its California based expert in the New York arbitration as a justification for bringing Japanese witnesses to New York would be highly questionable when even their expert stated in the Introduction to his report "[T]here was insufficient material about the MOL COMFORT, the Incident or the events leading up to the Incident for [the expert] to perform any independent calculations."[17]

Plaintiff's assertion that defending this case in New York, in which the liability issues are entirely duplicative of those already being litigated in Tokyo, would not be inconvenient for MHI is ridiculous on its face. The New York offices of MHI's independent subsidiaries provide no basis or convenience for MHI to litigate in the courts of the U.S. and HMM has never identified a single employee of MHI or any subsidiary residing in the U.S. with any knowledge of the Incident or the Vessel. HMM's allegation that MHI is "a party to at least sixteen unrelated lawsuits in the United States" is both factually inaccurate and irrelevant. HMM is aggregating

---

[16] Although similar in many ways, the AZ is not a "sister ship" of the Vessel and there are many differences. However, an inspection of another ship, a year before the accident is irrelevant to this litigation.

[17] *See* HMM001695.

8

cases where MHI had not even been served or appeared, or involving patent or contract disputes with U.S. entities and instances of specific jurisdiction and likening them to this entirely foreign dispute involving foreign parties with no relation to the U.S. Also, HMM's allegations that MHI may have agreed to U.S. arbitration clauses in entirely unrelated business contracts, as well as the mention of its anti-trust guilty plea are red herrings and irrelevant to determining the most appropriate forum to litigate this particular dispute.

As the New York arbitration is based upon Nike's contract with HMM and limited to Nike's damages, the contract liability issues are entirely different from the product liability issues in this litigation. From what MHI can gather from the limited arbitration documentation that has not been withheld by HMM or Nike, most of the documentation is irrelevant to this litigation. It appears from the documents produced, HMM and Nike's Pre-Arbitration Statements, that the arbitration proceedings are focused primarily on calculating Nike's damages under the specific unique provisions of their "confidential" Service Contract, to which MHI was not a party, and HMM and Nike refused to produce. Certainly, HMM has not and cannot cite to any case law to support their proposition that a unique secret agreement among two parties should control where someone who is not a party to the agreement must litigate.

As discussed in MHI's initial brief, it is clear from the facts of this case that the private interest factors, including the convenience and lower cost of attendance for necessary, mostly Japanese witnesses, as well as avoiding the use of interpreters and document translators strongly favors dismissal of this case in favor of continuing litigation in Japan.

### B. Public Interests

Regarding the public interests, HMM oddly asserts that "[t]his matter involves a dispute between various foreign entities in which Japan has little interest." To the contrary, by its

caption alone, it is clear that this specific dispute involves only two parties: a Korean plaintiff, and a Japanese defendant.  As the Second Circuit has held, where a conflict involves the interests of a foreign company and allegations of wrongdoing which occurred in that foreign company's country of origin (*e.g.*, negligent design / manufacture), the foreign country clearly holds the most significant interest in the matter, and regulating the conduct of its corporations and its industries.[18]  The interest is in fact so significant, that a preliminary choice of law analysis as dictated by the Second Circuit would in all likelihood result in the application of substantive Japanese law by this Court.

HMM attempts to tie a general U.S. interest to this litigation by alleging that the Vessel and its sister ships "traveled throughout the world, often calling at United States ports."  Again, the interests at stake in this litigation from a legal perspective involve HMM and MHI alone, and HMM has produced no evidence to support its bald assertion that this Incident had any impact on U.S. commerce other than its suggestion that every country in the world (presumably limited to all countries with a seaport) has a significant interest.

As discussed more fully in MHI's initial brief, the relevant public interest factors clearly indicate that Japan's interest in resolving this dispute involving a Vessel designed, manufactured, inspected, tested, and delivered in Japan, classified by a Japanese society, sold to a subsidiary of a Japanese company, and chartered and operated by a Japanese company, is immense.  On the other hand, the U.S. justice system, specifically the SDNY has a great interest in not burdening itself with an entirely foreign matter already being litigated in the courts of Japan.

---

[18] *See Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 587 (2d Cir. 2005) ("it is the state where the [alleged] negligence occurs that has the greatest interest in regulating the behavior of the parties.").

**CONCLUSION**

Considering the foregoing, we ask this Court to grant MHI's motion to dismiss Plaintiff's

Complaint on the grounds of forum non conveniens and in favor of continuing this litigation in

the courts of Japan.

Dated: New York, New York
       August 28, 2015

                                        Respectfully submitted,

                                        CONDON & FORSYTH LLP


                                        By _____
                                           Marshall S. Turner (MT 9246)
                                           Times Square Tower
                                           7 Times Square
                                           New York, New York 10036
                                           Tel.: (212) 490-9100
                                           Fax: (212) 370-4483

TO:

       John D. Kimball, Esq.
       BLANK ROME, LLP
       405 Lexington Avenue
       New York, NY 10174-0208
       (212) 885-5000
       jkimball@blankrome.com

# EXHIBIT A

**TO REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT MITSUBISHI HEAVY INDUSTRIES, LTD.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
*FORUM NON CONVENIENS***

CONFIDENTIAL – SUBJECT TO COURT ORDER

MOL Comfort/List of Litigations

| Ref. No. | | Plaintiff | Connection with MOL Comfort | The amount plaintiff requests in litigation (JPY) | | The content of the amount | The date the litigation was filed |
|---|---|---|---|---|---|---|---|
| L-1 | main lawsuit | Mitsui O.S.K. Lines, Ltd., Ural Container, MOL Euro-Orient, Rocky Crest | owner of the vessel, charterers | 7.26 | billion (and interests) | damage for vessel, loss of profit, the cost for the investigation of the reason for this accident, etc. | 1)10th January, 2014 (the amount plaintiff requests was 4 billion) 2)17th February, 2014(the amount prainoff requests was raised from 4 billion to 13.8 billion) 3)Participants subrogated some of the amount plaintiff requested. |
| | | (participant)Mitsui Sumitomo Insurance, Tokio Marine & Nichido Fire Insurance Co., Ltd., Sompo Japan | Insurance companies | 6.54 | billion (and interests) | insurance payment | 14th March, 2014 |
| | | | subtotal | 13.80 | billion (and interests) | | |
| L-2 | separate lawsuit-1 | TT Club Mutual Insurance Limited  (U.K.) , Tokio Marine & Nichido Fire Insurance Co. Ltd. | Insurance companies | 0.97 | billion (and interests) | insurance payment | 3rd March, 2014 |
| L-3 | separate lawsuit-2 | Insurance companies : Mitsui Sumitomo Insurance, Tokio Marine & Nichido Fire Insurance Co., Ltd., Sompo Japan, and other 5 insurance companies (registered at Japan) Owner of Goods : Aishi AW Co., Ltd. | Insurance companies, an owner of goods | 20.02 | billion (and interests) | insurance payment, damage for the loss of the goods | 3rd March, 2014 |
| L-4 | separate lawsuit-3 | Nipponkoa Insurance Co., Ltd., Sompo Japan, Tokio Marine & Nichido Fire Insurance Co., Ltd., and other 5 insurance companies (registered at Japan) | Insurance companies | 6.32 | billion (and interests) | insurance payment | 3rd March, 2014 |
| L-5 | separate lawsuit-4 | Hellmann Worldwide Logistics Inc. | forwarder | 0.01 | billion (and interests) | fare for the transportation | 7th March, 2014 |
| L-6 | separate lawsuit-5 | Pohjola Insurance Ltd (Finland) | Insurance company | 0.25 | billion (and interests) | insurance payment | 9th April, 2014 |
| L-7 | separate lawsuit-6 | Nippon Yusen Kabushiki Kaisha (NYK LINE) | joint navigator | 0.15 | billion (and interests) | penalty and damage paied to lesser | 23th April, 2014 |
| L-8 | separate lawsuit-7 | Carl Schroeter GmbH& Co. KG (Germany) | Insurance company | 0.54 | billion (and interests) | damage of the owner of the goods (the plaintiff was assigned the right to request from the owner of the goods) | 30th April, 2014 |
| L-9 | separate lawsuit-8 | Panalpina Welttransport (Deutschland) GmbH (Germany) | forwarder | 0.02 | billion (and interests) | damage of the owner of the goods (the plaintiff was assigned the right to request from the owner of the goods) | 30th April, 2014 |
| L-10 | separate lawsuit-9 | DSV Ocean Transport A/S (Denmark), Damco A/S (Denmark), Cargo Container Lines Ltd. (Virgin Islands) | forwarder | 0.03 | billion (and interests) | damage of the owner of the goods (the detail is unknown) | 30th April, 2014 |
| L-11 | separate lawsuit-10 | ABN Amro Schadeverzekering N.V. (Netherlands) and 91 companies who are either of the owners of the goods or insurance companies (registered at Korea, U.K, Switzerland, Hong Kong, Japan, Singapore, Netherland, Belgium, Austria, Germany, France, Saudi Arabia, Denmark, U.S.A, Australia, Spain, Indonesia and Sweden) | owners of the goods, insurance companies | 16.28 | billion (and interests) | damage of the owner of the goods, insurance payment | 12th May, 2014 |
| L-12 | separate lawsuit-11 | Allianz Fire & Marine Insurance Japan Ltd. | Insurance company | 0.08 | billion (and interests) | insurance payment | 9th June, 2014 |
| L-13 | separate lawsuit-12 | Pelorus Ocean Line Limited (Hong Kong) and 10 other carriers (registered at Germany, China, Australia, Singapore, Virgin Islands, Hong Kong, U.K. and Taiwan) | forwarder | 0.10 | billion (and interests) | damage of the owner of the goods (the damage is unconfirmed) | 27th June, 2014 |
| L-14 | separate lawsuit-13 | Amlin Corporate Member Limited (U.K.) and other insurance companies (registered at U.K. and U.S.A.) | Insurance companies | 0.01 | billion (and interests) | insurance payment | 30th June, 2014 |
| L-15 | separate lawsuit-14 | APL Co. Pte Ltd. (Singapore) | joint navigator | 0.29 | billion (and interests) | damage for containers, loss of profit | 20th August, 2014 |
| L-16 | separate lawsuit-15 | Nippon Yusen Kabushiki Kaisha (NYK LINE) | joint navigator | 0.01 | billion (and interests) | assigned right to claim for compensation from insurance cometary | 25th August, 2014 |
| L-17 | separate lawsuit-16 | Ziegler Logistics (Hong Kong) Limited. | forwarder | 0.01 | billion (and interests) | damage of the owner of the goods (the damage is unconfirmed) | 27th August, 2014 |

MHI_001913

CONFIDENTIAL – SUBJECT TO COURT ORDER

MOL Comfort/List of Litigations

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| L-18 | separate lawsuit-17 | Closed Joint Stock Company "Sollers Isuzu" (Russia) and 10 other companies who are either the owner of the goods or insurance company (registered at U.K., U.S.A., Finland and Sweden) | owners of the goods, insurance companies | 1.12 | billion (and interest) | damage of the owner of the goods, insurance payment | 2nd October, 2014 |
| L-19 | separate lawsuit-18 | Kuehne + Nagel (AG & Co.) KG | forwarder | 0.00 | billion (and interest) | damage from insurance company who paid insurance payment to the owner of the goods | 21st January, 2015 |
| L-20 | separate lawsuit-19 | Cathay Century Insurance Co., Ltd. (Taiwan) and 32 other insurance companies (registered at Taiwan, China, Vietnam, Singapore, Malaysia, Thailand, Germany, England, Switzerland, U.S.A, Czech, India, Austria and Philippine) | insurance companies | 2.40 | billion (and interest) | insurance payment | 29th January, 2015 |
| L-21 | separate lawsuit-20 | Hapag-Lloyd Aktiengesellschaft | forwarder | 0.01 | billion (and interest) | compensation payment for the owner of the goods, attorney fee | 12th March, 2015 |
| | | | Grand total | 62.42 | billion (and interest) | | |

MHI_001914

## CERTIFICATE OF SERVICE

I, the undersigned, attorney for the law offices Condon & Forsyth LLP, attorneys for

**DEFENDANT MITSUBISHI HEAVY INDUSTRIES LTD.**  do hereby certify that I have

served all counsel in this action with a copy of the pleading(s) herein below specified by ECF, to

the following address(es):

Pleading:  REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT MITSUBISHI HEAVY INDUSTRIES, LTD.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT FOR *FORUM NON CONVENIENS*

    **John D. Kimball, Esq.**
    BLANK ROME, LLP
    405 Lexington Avenue
    New York, NY 10174-0208
    (212) 885-5000
    jkimball@blankrome.com

at the address designated by said attorneys for that purpose via ECF.

By: _____

August 28, 2015

12