UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HYUNDAI MERCHANT MARINE CO., LTD.,  :
                                     :
                        Plaintiff,   :
                                     :          14 Civ. 7965 (LGS)
           -against-                 :
                                     :          **OPINION AND ORDER**
MITSUBISHI HEAVY INDUSTRIES, LTD.,   :
                        Defendant.   :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/01/2015

LORNA G. SCHOFIELD, District Judge:

Plaintiff Hyundai Merchant Marine Co., Ltd., a South Korean entity, filed suit against Mitsubishi Heavy Industries, Ltd., a Japanese entity, for losses suffered as a result of the sinking of the M/V MOL Comfort ("the Comfort"), a ship that Defendant designed and manufactured in Japan. Defendant has filed two motions to dismiss the Complaint -- under Rule 12(b)(2) for lack of personal jurisdiction and, alternatively, under the doctrine of forum non conveniens. For the reasons stated below, Defendant's forum non conveniens motion is granted, and the personal jurisdiction motion is denied as moot.

## I.   BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of the present motion, unless otherwise indicated.

Plaintiff is a South Korean entity with its principal place of business in Seoul, Korea. Plaintiff maintains its North American headquarters in Irving, Texas, and has sales offices at twenty locations throughout the United States, including one in New Jersey. Plaintiff surrendered its authorization to do business in New York on August 2, 2010.

Defendant is a Japanese entity with its principal office in Tokyo. Defendant operates the shipyard in Nagasaki that built the Comfort. The Complaint alleges that Defendant maintains at

least twenty offices throughout the United States, including a branch of operations in New York City, and that Defendant transacts business regularly in the State of New York. Defendant, however, disputes the allegations regarding its offices and transactions in the United States, and asserts that it does not maintain an office in New York.

On April 20, 2005, Defendant contracted with MOL Euro-Orient Shipping S.A. ("Euro-Orient") to build the Comfort. Defendant's shipyard in Nagasaki, Japan, built the vessel, using the same structure and design on at least seven other large container ships built since 2007. The Comfort was delivered to Euro-Orient on July 14, 2008.

Euro-Orient chartered the vessel to Mitsui O.S.K. Lines, Ltd. ("MOL") by a time charter in 2008, and sold the Comfort to Ural Container Carriers S.A. in 2011. The Comfort was time chartered to MOL on June 1, 2012. In 2012, Plaintiff entered into a slot charter arrangement with MOL and five other companies. The parties agreed to share space on a pool of container vessels, with each party contributing vessels for use. The Comfort was one of the vessels MOL provided to perform under the slot charter.

On June 17, 2013, the Comfort was traveling from Singapore to Jeddah, Saudi Arabia, with 4,382 containers of cargo on board. Included in that amount were 433 containers owned or leased by Plaintiff, holding cargo shipped by Plaintiff's customers. Two hundred nautical miles southeast of the coast of Yemen, the Comfort suffered a crack amidships and broke into two pieces, which eventually sank.

All of Plaintiff's containers were lost when the Comfort sank, causing Plaintiff a $10,000 loss on its insurance deductible. In addition, Plaintiff alleges that it faces liability from 117 claims arising from the sinking, including from Nike, Inc. over twenty-seven containers of lost cargo. On April 24, 2014, Nike demanded arbitration pursuant to a freight agreement it had with

Plaintiff, and proceedings are ongoing in New York.  Defendant is not a party to the arbitration, and Nike is not a party to this lawsuit.  The Complaint estimates that, including the Nike arbitration, Plaintiff faces over $22 million in third-party claims for cargo losses from the Comfort's sinking.

Plaintiff filed the Complaint on October 2, 2014.  It alleges that the Comfort was lost because of Defendant's negligent design and construction of the vessel.  After an initial conference, the parties conducted targeted discovery into facts concerning personal jurisdiction and forum non conveniens.  Defendant filed the instant motions on July 22, 2015, and both parties' briefs attach relevant affidavits and documentary evidence.

## II.  STANDARD

In deciding motions to dismiss based on the doctrine of forum non conveniens, courts in the Second Circuit engage in a three-step analysis.

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (internal citations omitted); *see also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc); *BMR & Assocs., LLP v. SFW Capital Partners, LLC*, 92 F. Supp. 3d 128, 139 (S.D.N.Y. 2015).

Courts may grant dismissal under the doctrine of forum non conveniens before ruling on challenges to jurisdiction.  *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 720 n.6 (2d Cir. 2013) (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007)).

**III.    DISCUSSION**

Each of the three relevant factors weighs in favor of dismissal to allow the parties to litigate in Japanese court.  A Tokyo district court is already hearing a case against Defendant involving nearly 200 plaintiffs alleging damages of over $500 million.  Although Plaintiff filed a claim in the Tokyo proceedings against the Comfort's owner and operator, it has not filed a claim against Defendant there, electing to bring this lawsuit instead.

**A.  Deference to Plaintiff's Choice of Forum**

A plaintiff's choice of forum is "generally entitled to great deference" when the plaintiff chooses to sue in his home forum.  *See Iragorri*, 274 F.3d at 71.  However, "[w]hen the plaintiff's choice is not its home forum . . . the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable."  *Sinochem*, 549 U.S. at 430 (internal quotation marks omitted).  "[T]he degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on the degree of convenience reflected by the choice in a given case."  *Norex Petroleum Ltd.*, 416 F.3d at 154 (internal quotation marks omitted).

Courts "consider the totality of circumstances supporting a plaintiff's choice of forum." *Id.*  "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."  *Iragorri*, 274 F.3d at 71–72.  Valid reasons for the forum choice "include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense."  *Id.* at 72.

> On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the plaintiff's choice commands . . . .

*Id.*

Considering the totality of the circumstances, Plaintiff's forum choice is entitled to little deference. As described above, this lawsuit involves a Korean plaintiff suing a Japanese defendant for the allegedly defective design and manufacture of a container ship designed and manufactured in Japan. Plaintiff's alleged losses stem from the Comfort's sinking off the coast of Yemen while traveling from Singapore to Saudi Arabia. Litigation in New York federal court would not serve the interests of (1) witness and evidence availability, (2) convenience to parties and (3) minimizing expenses. Although the parties have not submitted proposed witness or exhibit lists, liability and damages determinations will likely turn on evidence from the Defendant employees who designed, built, tested, sold and delivered the Comfort. These witnesses and their documents -- as well as those of the Japanese classification society that certified the vessel and Japanese entities that have either investigated or are investigating the Comfort's sinking -- are all presumably located in Japan.

Plaintiff asserts that it chose this forum because it is defending the Nike arbitration in New York; both parties to the arbitration -- Plaintiff and Nike -- have retained U.S.-based experts concerning the cause of the loss of the Comfort; Plaintiff and Nike have produced documents in the New York arbitration; and Plaintiff's New York counsel represents it in both the arbitration and this action. Plaintiff also argues that this forum is convenient because Plaintiff has an office in New Jersey, and has appeared here several times as a litigant.

Plaintiff argues further that several relevant events took place outside of Japan, and at least some key witnesses and evidence are more available to litigation in New York than Japan. For example, the Comfort was delivered to a Panamanian corporation in 2008, and that corporation transferred the ship in 2011 to another Panamanian corporation based in Hong Kong. Prior to its sinking, the Comfort had been operated, managed, inspected and repaired outside Japan, and its crew consisted of Russian, Ukrainian and Filipino nationals who neither reside in Japan nor speak Japanese.  Plaintiff argues also that information concerning the Comfort's "sister ships" (other ships built by Defendant with the same structure and design) would also be relevant, and that one sister ship was inspected in the United States in 2012.

Notwithstanding these arguments, the availability of witnesses and evidence weighs in favor of litigation in Japan.  First, the only U.S.-based witnesses Plaintiff identifies are its expert retained for the Nike arbitration, and those familiar with an inspection that took place in California of one of the Comfort's sister ships.  Plaintiff's U.S.-based expert is presumably available to testify wherever he is paid to do so.  That expert's testimony also could be less critical in the Japanese forum as experts providing similar opinions may already have been retained by one or more of the plaintiffs in the Japanese litigation.  Similarly, testimony from U.S.-based witnesses who inspected a sister ship is peripheral compared to testimony from the individuals who designed and built the Comfort itself.

While Japan may not be the exclusive location of relevant witnesses and evidence, it remains the forum where most witnesses and documents are likely to be located.  Despite Plaintiff's preference for New York, it is not the Plaintiff's "home."  For these reasons, the first step of the forum non conveniens inquiry weighs in favor of dismissal.

### B. Adequacy of Defendant's Alternative Forum

The second step of the forum non conveniens analysis "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Norex Petroleum Ltd.*, 416 F. 3d at 153.  Japan, Defendant's proposed alternative, is an adequate forum.

An alternative forum is adequate if "the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).  A forum is "usually . . . adequate so long as it permits litigation of the subject matter of the dispute, provides adequate procedural safeguards and the remedy available in the alternative forum is not so inadequate as to amount to no remedy at all." *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000), *vacated on other grounds*, 294 F.3d 21 (2d Cir. 2002).

Defendant -- the only defendant in this case -- is amenable to suit in Japan, and already is a party in the consolidated proceedings in the Tokyo district court.  Japanese law permits litigation of the subject matter of this action.  Plaintiff does not dispute that the ongoing proceedings in Tokyo cover essentially the same types of claims it is bringing in this lawsuit, and argues instead that Japan is not an adequate forum because of "the undue prejudice that [Plaintiff] would suffer as a result of significant delays and expense in commencing the new action, together with the inability of [Plaintiff] to present key witnesses and documents in Japan, and the apparent attempt by [Defendant] and the Japanese government to suppress evidence through non-disclosure agreements."

Plaintiff's arguments that Japan is not an adequate forum are meritless.  Plaintiff claims that it would face "significant delays and expense" if it had to file suit in the Tokyo district court

where it is already a claimant.  This assertion, as well as those regarding the unavailability of witnesses in Japan, relies entirely on statements from the declaration of one of its Japanese lawyers, Takayuki Matsui, who represents Plaintiff in the legal proceedings taking place in Tokyo.  Matsui's "opinion" describes one case against a shipper involving the loss of a ship, and its progress at trial and through the Japanese courts on appeal, and concludes: "This is, in my view, very typical of how shipping cases are dealt with in Japan."  This single example provides little probative evidence, and is as unpersuasive as suggesting that a single shipping case could be viewed as representative of all other shipping cases in U.S. courts.  Matsui also concedes that "the Japanese Civil Law system has a procedure to compel a witness to testify in court," but predicts in a conclusory manner that a Japanese court would not exercise that power in this case.

      Even assuming that Japanese procedures for discovery and trial are different from those in a U.S. court, such differences do not render Japan an inadequate forum so long as Defendant is amenable to suit in that forum, at least some procedural safeguards are in place and a meaningful remedy is available.  *See Norex Petroleum Ltd.*, 416 F.3d at 158 (noting "the well-established principle that '[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies"); *DiRienzo*, 232 F.3d at 57 ("Even if particular causes of action or certain desirable remedies are not available in the foreign forum, that forum will usually be adequate so long as it permits litigation of the subject matter of the dispute, provides adequate procedural safeguards and the remedy available in the alternative forum is not so inadequate as to amount to no remedy at all."); *Borden Inc. v. Meiji Milk Prods. Co.*, No. 90 Civ. 5611, 1990 WL 151118, at *7 (S.D.N.Y. Oct. 3, 1990) ("The procedures and remedies available in a Japanese court may not be identical to those available in a U.S. district court, but this does not render Japan an inadequate forum.").

Finally, Plaintiff insinuates that the Japanese government is colluding with Defendant to suppress evidence and interfere with claims against Defendant by imposing non-disclosure agreements on witnesses that would keep them from testifying.  This argument seems to have its origin in a statement made by Defendant's declarant Tomoko Miyake, one of Defendant's managers.  In support of Defendant's argument that Japan has a strong interest in deciding this case in Japanese courts, Miyake's declaration states: "MHI employees are currently under non-disclosure agreements with the Japanese Government regarding their involvement in the investigation.  The Japanese Government expressed serious concern to MHI that MHI's participation in a lawsuit in the U.S. could impede its investigation by jeopardizing its confidential nature."  Although Plaintiff submitted a declaration interpreting this statement to mean that the Japanese government "is attempting to influence the outcome of the case," Defendant's reply brief explains that non-disclosure agreements were required only for Defendant's employees who were members of an investigative committee for the accident, and not all witnesses.  Other than the existence of these agreements, Plaintiff points to nothing to support its theory that the Japanese government seeks to deprive Plaintiff of fair proceedings in Japan.

Japan, Defendant's alternative forum, is adequate for forum non conveniens purposes.

### C.  Balance of Private and Public Interests

As the final step of the forum non conveniens analysis, courts balance the public and private interests "to determine whether the convenience of the parties and the ends of justice would best be served by dismissal."  *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 275 (S.D.N.Y. 2010) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).  Private interest factors include

>  the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Iragorri*, 274 F.3d at 73–74 (quoting *Gulf Oil Corp.*, 330 U.S. at 508).  Public interest factors include minimizing administrative difficulties, and the "local interest in having localized controversies decided at home."  *Id.* at 74 (quoting *Gulf Oil Corp.*, 330 U.S. at 509).

The balance of private interests weighs in favor of dismissal.  As discussed above, most of the witnesses and relevant documents are likely to be found in Japan, which tips the balance in favor of dismissal.  *See J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258, 1272 (M.D. Fla. 2007) ("While the Court agrees that the burdens of letters rogatory and the Japanese consular procedure for the taking of depositions for United States litigation alone are not a basis to dismiss for *forum non conveniens*, this inconvenience weighs in the balance in favor of dismissal."); *U.S.O. Corp. v. Mizuho Holding Co.*, No. 06 Civ. 459, 2007 WL 2893628, at *5 (N.D. Ill. Sept. 27, 2007), *aff'd*, 547 F.3d 749 (7th Cir. 2008) ("Because Japan is not a party to the Hague Evidence Convention, compelling evidence, whether testimonial or documentary, from a third-party witness in Japan for a case litigated in an American court is extremely burdensome and sometimes impossible."); *Fluoroware, Inc. v. Dainichi Shoji K.K.*, 999 F. Supp. 1265, 1273 (D. Minn. 1997) ("Many of the potential, non-party witnesses are located in Japan, outside of this Court's compulsory process.  Even if the parties were to travel to Japan and take these witnesses' depositions for use at trial, the costs involved would be very large.").  To the extent Plaintiff identifies non-Japanese witnesses who would be equally inconvenienced by litigation in either Tokyo or New York, Plaintiff does show that compulsory process would be easier for a U.S. court than a Japanese one.  *See* Fed. R. Civ. P. 45(c)–(d) (limitations on

10

subpoena powers based on location, undue burden and expense); *Banculescu v. Compania Sud Americana De Vapores, SA*, No. 11 Civ. 2681, 2012 WL 5909696, at *8 (S.D.N.Y. Nov. 26, 2012) (holding that "the 'availability of compulsory process for unwilling witnesses' weighs significantly in favor of" a foreign forum because most potential witnesses "reside in Germany and Romania or other foreign jurisdictions outside the Court's subpoena power and cannot be compelled to give evidence in this case").

The expense of forcing Defendant's employees to travel to New York for trial also weighs in favor of the Japanese forum. While Plaintiff asserts that Defendant is able to provide for the travel arrangements "with relative ease and minimal expense," forcing Defendant's employees to travel back and forth between Tokyo and New York to testify in parallel litigations would be impractical and unduly burdensome to Defendant. *See Ioannides v. Marika Mar. Corp.*, 928 F. Supp. 374, 379 (S.D.N.Y. 1996) (holding that "it is perfectly plain that the cost of producing willing witnesses for trial would be far less to all concerned were the case conducted in Greece").

The balance of public interests weighs in favor of dismissal as well. Aside from the allegations about the Nike arbitration and repairs made to a sister ship in a California port, the Complaint is devoid of any connection to the United States or New York. U.S. (and particularly New York) courts have no interest in adjudicating this case. Japan, on the other hand, has a strong local interest in deciding this litigation. As Defendant points out, it is a Japanese entity and the Comfort was "designed, manufactured, inspected, tested, and delivered in Japan, classified by a Japanese society, sold to a subsidiary of a Japanese company, and chartered and operated by a Japanese company." For the same reasons, Japanese law would likely apply in this litigation, which is another factor in favor of adjudicating the case in Japan. *See Rationis Enters.*

*Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 588 (2d Cir. 2005) ("Even if we were to consider the allegiance of some of the cargo interests as favoring United States law to some degree, . . . it is the place of the alleged wrongful act that tips the scale in favor of Korean law, for Korea, with its extensive shipbuilding business, possesses the greatest interest and responsibility in regulating the industry.").

As with the first two steps, the balance of private and public interests weighs in favor of dismissal in favor of a Japanese forum.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss based on forum non conveniens is GRANTED, mooting its alternative motion for lack of personal jurisdiction. This Opinion notes that Defendant's briefing concedes that it is amenable to service of process in Japan, and interprets this to mean that Defendant will not resist any attempt by Plaintiff to commence litigation against Defendant in that forum.

The Clerk of Court is directed to close the motions at Docket Nos. 39 and 43 and close the case.

SO ORDERED.

Dated: December 1, 2015
       New York, New York

*[signature]*

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

12